The appellant is appearing on submission, so we'll hear from the appellee, Mr. Spears. Good morning, Your Honors. May it please the Court, my name is Brian Spears. I represent Greg Garvey and Red Knot Acquisitions. At counsel table with me is Tony Maidaka, who As the Court is aware, this appeal concerns the so-called RICO Amendment, which is a bar to civil RICO actions. And this morning, I'd like to address my remarks to two points. The first... Could I just ask a quick question? Yes, Your Honor. Am I right in understanding that this is the first time the RICO Amendment has been brought to the Court's attention in all these many years of proceedings? Your Honor, yes, it was raised for the first time in connection with a Rule 12c motion. I would emphasize that it was a timely filed 12c motion as soon as the pleadings closed. Within 30 days of that, we filed, with Judge Arnerton's permission, the motion pursuant to Rule 12c. But you're correct, Your Honor, there was no prior 12b6 motion that addressed this. I don't believe there's no claim of waiver by the plaintiff in regards to that. So the first point I wanted to address with the Court was the legal standard that applies here. It's our position that the District Court applied the correct legal standard. The question is whether conduct alleged in the complaint is actionable as securities fraud. So if it's actionable as securities fraud, does that mean that somebody has to actually... You could imagine somebody bringing a securities fraud action? Yes, Your Honor. So Virginia is not going to bring a securities fraud action because she was not part of a transaction for securities. The SEC is not going to bring an action because none of these schemes implicate the securities markets, right? Well, I would respectfully disagree with that, Your Honor. Really? You think the SEC would bring an enforcement action here? Well, at this stage, perhaps not. But when you look at the definition from the Supreme Court in SEC v. Zanford, which talked about when is securities fraud existing in the context of a scheme to defraud, here, where the securities transactions coincide as directly as they do... Well, in Zanford, the Supreme Court also says that we should not convert every common law fraud claim into a securities fraud claim just because it happens to involve securities, right? That's correct, Your Honor. And so in this kind of case, aren't the securities sort of incidental? So in the Silvernot scheme, really the fraud is the conversion of the payment for the rent, right? Well, in the Silvernot scheme, the fraud goes – well, first of all, you have the overall fraud scheme, which is the backdrop to the entire complaint. But then you do have the purchase of the shares of Wise Metals in the first place. Yeah, but that happens afterwards, right? So David acquires a 25 percent equity interest in New England Redemption because he gave free office space to New England Redemption, right? And then after that – so then he converts that profit to his own use. And after that, he just uses that money to do a securities transaction. But that securities transaction is subsequent to the real fraud, which was the conversion. But the Silvernot scheme, as alleged, traces back to the New England Redemption transaction and then runs all the way through the sale of the Wise Metals shares for $30. So after he took the 25 percent interest in New England Redemption and got a profit from it because he then took that money and bought securities, you're saying the whole thing really is a securities fraud? Yes, Your Honor. I mean so if you look at the Zanford test and you ask the question that the district court asked is whether the securities fraud – the securities transaction and the fraud overlap. But you acknowledge that there was no real fraud in the actual securities transaction. Neither the buyer nor the seller of the actual securities was being misled. Well, so there are two parts to that question. The allegation isn't about a misrepresentation. Our position is that the coincides with test is met here because of the fact that it was a scheme to defraud. And the scheme to defraud coincided with – saying, okay, you did this Wise Metals transaction, and that all was on the up and up. There wasn't fraud inherent in that transaction. But because you conducted the transaction by using profits that you had converted from – that should have rightfully belonged to the estate, we're going to come after you for securities fraud. That's like a 10B violation. Yes, Your Honor. Really? Absolutely. And, in fact, SEC versus Zanford itself is very closely analogous here. We had a broker who sold his – Well, and the SEC actually brought an enforcement action in that case. And the court talks a lot about the harms of the securities markets that happen when you can't trust your broker to treat a brokerage account as the client's property and so on. So there was a pretty strong interest in policing the securities markets. That's true, Your Honor. But the Supreme Court did say specifically that the effect on the markets overall, while it's one of the purposes of Section 10B, is not the only purpose. What if we agree with you that the Silvernot-Wise Metals scheme triggers the RICO amendment because the securities were what he acquired and the fraud was really inherent in that. But Red Knot is a much broader kind of scheme. The forbearance, because it would be the bank, does not trigger, doesn't as inherently involve and coincide with securities transactions, notwithstanding the pledge of some securities along with a lot of other collateral. What happens then? Yes, Your Honor. Good question. Under the case of the Zohar decision and other cases that have held that if one of the predicate acts is barred by the RICO amendment, then the entirety of the RICO claim fails. The case law is clear on that. I don't know of any case to the contrary to that proposition. Can she then replead? Can she amend her complaint to drop the predicate act that was subject to the bar and move forward on the one that's not? The courts do caution against artful pleading to avoid the effects of the RICO amendment. But I would also submit to the court that the Red Knot transaction itself is very closely related to the securities transaction. It was, in fact, according to the allegations in the complaint, the pledging of the state assets, which included significant securities, that was the breach of fiduciary duties. There's a very close connection there. But again, following up on what Judge Panasci was asking, that's not something that the SEC would ever find actionable and go after is securities fraud. It was a pledge of those assets among other assets. But that wasn't at the center of the transaction. The center of the transaction was the agreement not to go after that the whole debt would come due if David's position were challenged, right? But the leverage point, Your Honor, so I respectfully disagree. The leverage point was the fact that the state's assets, including the securities, had been pledged. And there's no dispute. So if there were one share of security that was pledged as part of the state's assets, which included voluminous amounts of real estate and cash and other kinds of assets, if there had been one share pledged, you'd say that would be enough to trigger the RICO amendment? Not necessarily. I mean, I think at some point there is a point at which a transaction is too tangential. Well, here there were a lot of other assets, right? There were some securities that were pledged, but there were other assets as well, right? Yes, there were, Your Honor. But this was the estate's ownership of three significant corporations. So our view is that there were significant assets. But in this case, the real fraud is she alleges that it's a sham transaction. It's designed to keep David in place as the executor, right? Yes. And so I understand that it happens that the assets that the estate had under which there was a lien, over which there was a lien, included securities. But if the estate held a lot of real estate and there was a lien on all of their real estate holdings, it would have had the same effect, right? Isn't it sort of accidental that they had a lot of the securities and those were the assets over which, what's it called, Red Knot had the lien? No, I don't think it was accidental. I mean, if you look at the forbearance agreement, which is in the appendix that we submitted, it's attached to the complaint. You can see that it's the first set of assets that's pledged. So what essentially happened was Red Knot had the ability to foreclose on all of the assets. And again, the fraud then is that it's a sham transaction overall. But because she alleges that both Red Knot and David as the executor of the estate are in on the scheme, neither one of them is misled in the securities transaction, right? So you're saying there's fraud, which is an overall sham transaction, and there are securities. But there isn't actually fraud in the sale of the securities. But I would disagree, Your Honor. The fraud, it's really in essence a breach of fiduciary duty, was the posting of all of the estate's assets, including the securities. So there's a very close relationship between the securities and the breach of fiduciary duty. As Judge Arterton, I think, very correctly stated, it was that posting, is the word she used, that posting of the securities that was the breach of fiduciary duty. That's the way it's alleged. So we submit that the Red Knot and the Silver Knot transactions both support the Rule 12c grant. Can I ask a question about the Silver Knot? I think there's a couple of different visions of what the alleged scheme is. And one that we've talked about is that the proceeds from the New England Redemption were converted and then used for an individual investment. I read the complaint as suggesting that, in fact, the investment in Wise Metals was done in the name of and on behalf of the estate. And there was an allegation that it continued to carry Wise Metals as an asset of the estate until after the sale of Wise Metals and that the conversion happened then. And I understand the complaint to be arguing that the reason that's not a securities fraud ties into the exemption in the Sanford case. The specific caveat there that, oh, this wasn't a situation where the intent to divert the proceeds came after they were sold. And I'm wondering what your response is to that formulation and whether I'm right or wrong in my understanding of the allegations. Yes, Your Honor. So in Sanford, the Supreme Court said that if the securities transaction is independent of the fraud, then at that point it becomes too tangential. But here they're not independent. And, in fact, the way that the specific language in the complaint is that the fraud occurred, quote, upon the sale of the Wise Metals shares. So that's, in our view, in itself satisfies Sanford. But there's a lot more to the Silvernod transaction. And one thing that perhaps isn't emphasized enough in our brief is the predicate acts of mail and wire fraud that appear in the complaint are also very significant here because those predicate acts include the creation of Silvernod, which was the vehicle through which the shares were purchased. The purchase of the Wise Metal shares in 1999 is alleged as a mail fraud. So when you created Silvernod and Silvernod was purchasing Wise Metals or an interest in Wise Metals, the estate was not involved at that point, right? Correct. David was acting through Silvernod under his own name, not on behalf of the estate. Right, but those are – those acts are alleged as predicate acts of mail fraud. Right, but that's because Virginia's allegations are that he had converted the money that he then used to do this from the estate. But that just depends on the earlier transaction between New England Redemption and the estate. Right. But at the time that he's creating Silvernod and having a transaction with Wise Metals, just the estate is not involved. That's correct. He was using, according to the allegations, estate assets to purchase that interest in Wise Metals. Right. So the way this argument works is, well, there was a fraud in converting the estate assets when he provided rent to New England Redemption and the profits he converted to his own use. They took those profits that he converted to his own use and went and did a securities transaction in his own name. But it's also – it's interesting though. In the complaint, it's alleged the purchase of the Wise Metals shares at the outset is alleged to be a mail fraud. So it's very much part of the ongoing scheme to defraud. And the reason why it's alleged to be a mail fraud is because he's representing the money as his own, but actually it rightfully belongs to the estate. That's the way it's alleged. Yes, Your Honor. Okay. I see my time is up. Well, if there aren't any other questions, thank you very much, Mr. Spears. Thank you, Your Honor. So we ask that the judge be affirmed. Okay. Thank you. The case is submitted.